# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

OUDERKIRK RTP, INC.,

                      Plaintiff,

-against-

PETER L. ARNOS, EDNAMAE ARNOS,
FASHION CARE LAUNDRY & DRY CLEANERS INC.
HYUN SHIK CHUN and NEW FASHION CARE
LAUNDRY & DRY CLEANERS, INC.,

                      Defendants.

Civil Action No.: 1:14-CV-0767
(DNH/CFH)

Trial by Jury Demanded

Plaintiff, by its attorneys, Cooper Erving & Savage LLP, for its Complaint, alleges as follows:

## INTRODUCTION

1.     In this action, Plaintiff seeks *inter alia* compensation, reimbursement, indemnification and contribution for past and future costs incurred arising from environmental contamination (the "Contamination") on, at, under or emanating from the property at 595 Columbia Turnpike, East Greenbush, County of Rensselaer and State of New York (the "Property") and an injunction requiring that the Defendants immediately cease and desist from discharging and releasing hazardous substances at this site and to implement further necessary investigation and cleanup of the Property by the Defendants.

1

2. The Contamination is caused by the releasing (collectively the "Releases") of hazardous substances (the "Contaminants" and/or "Contamination") at the dry cleaning and laundry facility owned and/or operated by Defendants on the Property.

3. The Contaminants include, but are not limited to, chlorinated volatile organic compounds ("VOCs") such as tetrachloroethylene ("PERC" or "PCE") and its "daughter" products and cis-1, 2- dichlorethene.

4. Plaintiff brings this action pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") 42 U.S.C. §9601 *et seq.* and various supplemental claims, including common law and equitable claims against Defendants.

## PLAINTIFF

5. Plaintiff Ouderkirk RTP, Inc. ("Plaintiff") is a New York corporation with offices located at 360 Clay Hill Road, Fort Ann, New York 12827.

6. Plaintiff is the owner of the Property located at 595 Columbia Turnpike, East Greenbush, New York 12061.

7. Plaintiff is also the owner of parcels adjacent to 595 Columbia Turnpike ("Adjacent Properties").

## DEFENDANTS

8. Upon information and belief, Defendant Peter L. Arnos is an individual who resides at 124 Mohawk Avenue, Rensselaer, New York 12144.

9. Upon information and belief, Defendant Ednamae Arnos is an individual who resides at 124 Mohawk Avenue, Rensselaer, New York 12144.

207008

10. Upon information and belief, Defendant Fashion Care Laundry & Dry Cleaners Inc. ("Fashion Care") is a New York corporation with offices at 124 Mohawk Avenue, Rensselaer, New York 12144.

11. Upon information and belief, Defendant Hyun Shik Chun ("Chun") is an individual with offices at 595 Columbia Turnpike, East Greenbush, New York 12061.

12. Upon information and belief, Defendant, New Fashion Care Laundry & Dry Cleaners, Inc. ("New Fashion Care") is a New York Corporation with offices at 595 Columbia Turnpike, East Greenbush, New York 12061.

## HISTORY OF THE PROPERTY AND
## THE DRY CLEANING BUSINESS

13. On or about 1956, Plaintiff's predecessors in interest, Ervin C. Ouderkirk and Helen M. Ouderkirk (the "Ouderkirks"), became owners of the Property.

14. In November of 1959, the Ouderkirks entered into a ninety-nine (99) year lease agreement (the "Lease") with Louis P. Arnos.

15. On or about April of 1960, the building located at 595 Columbia Turnpike was constructed by Louis P. Arnos.

16. Prior to the construction of this building, the subject Property was vacant.

17. Louis P. Arnos was the first tenant on the Property.

18. Louis P. Arnos owned and operated a dry cleaning and laundry business on the Property from the early 1960s until his death in 1999.

19. Upon information and belief, Louis P. Arnos assigned his interest in the subject Lease to his son, Peter L. Arnos, and Ednamae Arnos.

207008

20. Pursuant to the terms of the November 1959 Lease, Peter L. Arnos and Ednamae Arnos took this assignment subject to all of the terms, provisions and covenants contained in the Lease.

21. Pursuant to the terms of the Lease, while the Lessee could assign the Lease, the assignment did not release the Lessee from the obligations and covenants of the Lease, nor would such an assignment alter or render nugatory any of the other terms, provisions or covenants of the Lease.

22. Peter L. Arnos and Ednamae Arnos continued to own and operate a dry cleaning and laundry business on the property known as Fashion Care Laundry & Dry Cleaners, Inc.

23. On or about October 22, 1997, the Ouderkirks assigned their interest in the subject Lease and Property to Ouderkirk RTP, Inc.

24. The 1959 Lease has been modified by agreements dated December 14, 1960, December 29, 1961, July 12, 1965, January 8, 1971 and March 12, 1996.

25. These subsequent Lease modifications provide that all of the terms and provisions contained in the original November of 1959 Lease, except as specifically amended or modified, shall remain in full force and effect.

26. On or about July 7, 2004, Peter L. Arnos, Ednamae Arnos and/or their corporation Fashion Care Laundry & Dry Cleaners, Inc. assigned, transferred and sold their interest in the 1959 Lease and the subject Lease modifications to Chun ("Chun").

27. Chun, pursuant to this assignment, agreed to perform all of the terms and provisions of the Lease and assume full responsibility for the Lease, as if he signed the Lease originally as tenant.

207008

28. Chun continued to own, manage, control and operate a dry cleaning and laundry business at the site known as New Fashion Care Laundry & Cleaners, Inc.

29. This laundry and dry cleaning business at this 595 Columbia Turnpike location continues to operate as of the present time.

30. The dry cleaning and laundry business, and the individual Defendants, used hazardous substances in its operation and released hazardous substances into the environment.

## DISCOVERY OF THE CONTAMINATION

31. On or about September 13, 2013, Plaintiff entered into a contract with Dearborn Land Investment, LLC for the sale of the Property, along with others Plaintiff owns that are contingent to or adjacent to it.

32. As part of their due diligence in purchasing the subject property and adjoining parcels, Ransom Consulting, Inc. ("Ransom") was retained to perform a Phase I Environmental Site Assessment of the subject Property.

33. On or about January 9, 2014, Ransom issued its Phase I Environmental Site Assessment Report.

34. During its inspection of the subject property, Ransom observed containers of miscellaneous, maintenance related, over-the-counter, commercial cleaning chemicals and canisters of hazardous waste (dry cleaning related materials).

35. Since the Phase I Environmental Site Assessment Report identified evidence of the release of Contaminants, Dearborn Land Investment, LLC requested that Ouderkirk RTP, Inc. obtain a Phase II Limited Subsurface Investigation ("LSI") to identify both the source and extent of the Contamination.

207008

36. In March of 2014, Ransom conducted a Phase II LSI at the site which included the advancement of soil borings, the field screening of soil samples, the installation of temporary monitoring wells and the collection and chemical analysis of soil and groundwater samples.

37. On or about May 5, 2014, Ransom issued its Phase II Report.

38. In that Phase II Report, Ransom arrived at the following conclusion:

> Chlorinated volatile organic compounds (VOCs) including PCE, trichloroethene (TCE) and cis-1,2 dichlorethene associated with the current on site dry-cleaning operations were detected in the soil and ground water samples collected as part of this investigation at concentrations above the applicable NYSDEC Soil Cleanup (SCO) and GA Groundwater Quality Standards.

39. The VOCs, including PCE or PERC, are substances that are associated with use in the dry cleaning business.

40. Based on the approximate dimensions and concentration of the PCE release into the soil, Ransom determined the mass of PCE in the soil to be above the NYSDEC reportable quantity for PCE.

41. Ransom further concluded in its Phase II report that, based on the existing data set, soil and groundwater containing chlorinated VOCs associated with the dry cleaning operation at 595 Columbia Turnpike extended from the new Fashion Care dry cleaning facility onto Adjacent Properties.

42. In accordance with Part 595.3 of the New York State Environmental Law, the NYSDEC was notified by Plaintiff of the historic release of PCE into the environment at the Property.

207008

43. Neither Plaintiff nor its predecessors in interest were aware of the existence of the Contamination prior to this Phase II Limited Subsurface Investigation.

44. Neither Plaintiff nor its predecessors in interest contributed in any way to the release or discharge of the Contamination.

45. Neither Plaintiff nor its predecessors in interest owned, controlled or managed the dry cleaning operations at the dry cleaning business.

46. Upon information and belief, Defendants concealed the existence of the Contamination from Plaintiff and its predecessors.

47. Defendants failed to report to the NYS DEC the release of hazardous substances into the environment.

## THE CAUSE OF THE CONTAMINATION

48. The Contaminants including, but not limited to, chlorinated VOCs including PCE, TCE and cis-1,2 dichlorethene detected in the soil and groundwater at the Property are associated with the dry cleaning business.

49. Defendants have been using the Property as a dry cleaning facility since approximately 1960.

50. The Contaminants released on the subject Property were discharged and released by Defendants in the course of their ownership and operation of the dry cleaning business on the subject Property.

51. As a direct result of their discharging and releasing Contaminants at their dry cleaning facility, Defendants have caused PERC/PCE to be present at the subject Property in concentrations above the NYSDEC reportable quantity for PERC/ PCE and above applicable standards.

207008

## RESPONSE TO THE CONTAMINATION

52. Based on the Phase II LSI investigation, the NYS DEC and Ransom have concluded that additional environmental response actions are warranted.

53. Among other recommendations, Ransom recommends that additional investigation is necessary to fully determine the nature and extent of chlorinated VOC impacts on the Property and Adjacent Properties, as well as to evaluate appropriate remedial alternatives.

54. Ransom further advises that due to the concentration of Contaminants detected in the soil and/or groundwater, excess soil and groundwater generated during the construction of a building or any other structure will need to be managed in accordance with a Soil and Groundwater Management Plan and applicable local, state and federal regulations.

55. Ransom also recommends that a vapor mitigation system be incorporated into the design of any proposed building to mitigate potential impacts to indoor air quality from vapor intrusion of VOCs identified in soil and groundwater on the Property.

56. As a result of the Contamination at the Property, remedial response actions under NYSDEC direction, including NYSDEC approval of a Proposed Remedial Action Plan, are necessary at the Property and off-site areas.

57. These necessary remedial actions, among other items, may include soil removal, groundwater remediation activities, soil contaminant encapsulation, long term groundwater monitoring and/or deed or land use restrictions.

58. Upon information and belief, the necessary investigation and remediation of the Contamination may cost approximately Seven Hundred Fifty Thousand and 00/100 ($750,000.00) Dollars or more.

## THE CONTAMINATION

59. As a direct result of Defendants' discharging and release of hazardous substances at the dry cleaning facility that they owned and operated, they have caused Contamination of the soil and groundwater on the Property and Adjacent Properties.

60. The discharge and release of the aforementioned hazardous substances by Defendants into the environment is a violation of both Federal and State laws and regulations.

61. Defendants knew or should have known that their discharge and release of hazardous substances would cause Contamination of the Property that would persist, if not remediated, into the future.

62. This Contamination poses a potential threat both to the environment, the public and users of the Property and Adjacent Properties.

63. As a direct, proximate and natural consequence of Defendants' discharge and release of hazardous substances into the environment, Contamination of the Property has occurred and the Property has been significantly damaged.

64. As a direct and proximate and natural consequence of Defendants' discharge and release of hazardous substances into the environment and the resulting Contamination of the Property, Plaintiff will be forced to undertake necessary and further environmental investigation and response actions.

65. The value of the Property has been diminished and it will be necessary for Plaintiff to incur additional costs to investigate, remove, remediate and respond to the Contamination.

207008

## PROCEDURAL ISSUES

66. This Court has personal jurisdiction over all Defendants with respect to all Causes of Action of this Complaint pursuant to CPLR §§ 301 and 302, because Defendants, either directly or through their employees or agents, were or are doing business in New York; they committed tortious acts in New York or transacted business in New York with respect to the subject matter of this action.

67. This Court has subject matter jurisdiction over the First Cause of Action of this Complaint pursuant to CERCLA §113(e), 42 U.S.C §9613(b) and (e) and 28 U.S.C. §1331.

68. This Court has authority to issue a Declaratory Judgment concerning the rights and liability of the parties pursuant to 42 U.S.C. §9613(g)(2) and 28 U.S.C. §2201.

69. This Court has supplemental jurisdiction over the State law claims in the other Causes of Action of this Complaint pursuant to 28 U.S.C. §1367, since they arise out of a common nucleus of facts.

70. Venue is appropriate for the First and Second Causes of Action of this Complaint in the Northern District of New York pursuant to CERCLA §113(b), 42 U.S.C. §9613; 28 U.S.C §1391(b)(b) and the Third Cause of Action for Declaratory Judgment pursuant to 28 U.S.C. §2201 because the release and discharge of the hazardous substances and the resulting Contamination are all located within the Northern District of New York and, over all Causes of Action of this Complaint pursuant to 28 U.S.C. §1391, because the Property is located and the events related to the claims occurred within the Northern District of New York.

207008

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR STRICT LIABILITY UNDER CERCLA §107
### PLAINTIFF ALLEGES AS FOLLOWS:

71. Plaintiff repeats and realleges the allegations of paragraphs "1" through "70" of this Complaint, as if set forth in this paragraph at length.

72. The Property is a "facility," as defined in CERCLA §101(9), 42 U.S.C. §9601(9).

73. Defendants have been "operators," as defined by CERCLA §101(20), 42 U.S.C. §9601(20), of the Property at the time of the release of the hazardous substances.

74. The hazardous substances are "hazardous substances" as defined by CERCLA §101(14), 42 U.S.C. §9601(14).

75. There has been a release of hazardous substances at the Property.

76. Plaintiff has incurred necessary response costs in connection with the Contamination, all of which have been consistent with the National Contingency Plan, and are recoverable pursuant to CERCLA §107(a), 42 U.S.C. §9607(a).

77. Pursuant to CERCLA §107(a), 42 U.S.C. §9607(a), Defendants are strictly liable and responsible for investigation, cleanup, remediation and removal of the Contamination, and all of Plaintiff's associated past and future response costs, and this Court should direct such Defendants to pay all response costs incurred by Plaintiff, direct them to conduct any remedial activities that may be necessary as a result of the Contamination, and declare that they are responsible for future response costs.

### AS AND FOR A SECOND CAUSE OF ACTION
### UNDER CERCLA SECTION 113

78. Plaintiff repeats and realleges the allegations of paragraphs "1" through "77" of this Complaint as if set forth in this paragraph at length.

207008

79. The Property is a "facility" within the meaning of CERCLA §101(a).

80. Each Defendant is a "person" within the meaning of CERCLA §101(21).

81. Defendants are responsible persons and liable under CERCLA §107(a)(3) as persons who arranged for the disposal of hazardous substances at the Property.

82. A release or threat of release of hazardous substances into the environment has occurred, or continues to occur, at the Property.

83. CERCLA §113(f) provides that any person who has paid more than its allocable share of response costs may seek contribution from any other person that is liable or potentially liable under CERCLA §107(a).

84. As a direct and proximate result of Defendants' disposal, and/or release of hazardous substances at the Property, Plaintiff has incurred (and will continue to incur) response costs within the meaning of CERCLA §107(a).

85. Plaintiff has incurred and will continue to incur response costs related to the Property, including the removal and remediation of hazardous substances disposed of and released at the Property. These costs are necessary response costs pursuant to CERCLA and are expected to be and/or will be incurred in accordance with an agreement with the State of New York as part of a resolution of Plaintiff's potential liability under CERCLA.

86. Pursuant to CERCLA §113(f), Defendants are obligated to pay Plaintiff their contributive share of the foregoing costs and damages.

207008

87.     By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for an amount to be determined by this Court, plus interest and attorneys' fees, together with such other relief as the Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION
### FOR A DECLARATORY JUDGMENT

88.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "87" of this Complaint as if set forth in this paragraph at length.

89.     An actual controversy exists between Plaintiff and Defendants inasmuch as Plaintiff contends that Defendants are liable under CERCLA and are obligated to reimburse Plaintiff for their contributory share of past, current and future response costs incurred at the Property.

90.     Absent a judicial declaration setting forth the parties' rights and responsibilities with respect to these costs, a multiplicity of actions might result. A Declaratory Judgment will also serve the public interest, by assisting Plaintiff in undertaking the environmental remediation of the Property in furtherance of CERCLA's statutory goal to "protect the public health, welfare and environment."

91.     Pursuant to CERCLA §113(g)(2) and 28 U.S.C. §2201, Plaintiff is entitled to a Declaratory Judgment, binding in any subsequent action or actions, holding Defendants liable for future response costs or damages incurred by Plaintiff in connection with environmental conditions at the Property.

207008

### AS AND FOR A FOURTH CAUSE OF ACTION
### FOR NEGLIGENCE

92. Plaintiff repeats and realleges the allegations of paragraph "1" through "91" of this Complaint as if set forth in this paragraph at length.

93. Defendants owed a duty of care to Plaintiff and its predecessors with regard to their use or operation of the Property.

94. Defendants, in disregard of their duty and care, acted unreasonably and negligently in causing the Releases and the Contamination or failing to take reasonable precautions necessary to avoid the Releases and the Contamination.

95. Defendants knew or should have known of the dangerous characteristic properties and potentialities of the hazardous substances that were released into the environment.

96. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages which it is entitled to recover.

97. Defendants, by reason of this negligence, are liable for all of the damages to Plaintiff, including damages to the Property and the Adjacent Properties proximately caused by the Contamination and investigation, remediation, cleanup and removal of and response to the Contamination.

### AS AND FOR A FIFTH CAUSE OF ACTION
### FOR PUBLIC NUISANCE

98. Plaintiff repeats and realleges the allegations of paragraphs "1" through "97" of this Complaint as if set forth in this paragraph at length.

99. Defendants, through their use, occupancy and control of the subject Property, by causing the Contamination, and by failing to report the release of hazardous substances to

14

governmental authorities, have interfered with rights common to all, including use of groundwater.

100. Plaintiff, as owner of one of the properties impacted by the Contamination, has sustained special damages from this public nuisance and has lost the full use of its Property because of restrictions needed to eliminate exposure to the hazardous substances discharged by Defendants.

101. Defendants, by reason of this public nuisance, are liable for all of the damages to Plaintiff, including damages to the Property, proximately caused by the Contamination and investigation, remediation, cleanup and removal of and response to the Contamination.

### AS AND FOR A SIXTH CAUSE OF ACTION
### FOR PRIVATE NUISANCE

102. Plaintiff repeats and realleges the allegations of paragraphs "1" through "101" of this Complaint as if set forth in this paragraph at length.

103. Defendants, through their use, occupancy and control of the Property through abnormally dangerous activities, acts and omissions, released and discharged hazardous substances into the environment and onto the Property of Plaintiff.

104. Defendants' discharge and release of such hazardous substances has and will continue to cause an unreasonable and substantial interference with the ownership rights of Plaintiff to use and enjoy the Property.

105. As a direct and proximate result of Defendants' private nuisance, Plaintiff has suffered the aforesaid property damages, and is entitled to recover its costs, expenditures and damages caused by the Contamination, and investigation, remediation, cleanup and removal of and response to the Contamination.

207008

## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR TRESPASS

106.   Plaintiff repeats and realleges the allegations of paragraphs "1" through "105" of this Complaint as if set forth in this paragraph at length.

107.   Defendants' releasing and discharge of hazardous substances into the environment and onto the Property and Adjacent Properties of Plaintiff were unlawful acts or lawful acts done without permission and in an unlawful manner under the laws of the State of New York.

108.   Defendants' actions have intentionally intruded upon the property rights of Plaintiff and will have the effect of continued intrusion upon such property rights.

109.   As a direct and proximate result of Defendants' continuing trespass, Plaintiff has suffered the said Property damages and is entitled to recover its damages.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
## FOR WASTE

110.   Plaintiff repeats and realleges the allegations of paragraphs "1" through "109" of this Complaint as if set forth in this paragraph at length.

111.   During the term of their Lease, occupancy and/or use of the Property, Defendants wasted the Property by causing some or all of the discharges and releases of hazardous substances and the resulting Contamination, by allowing some or all of the discharges and releases of the hazardous substances to take place, and by failing to clean up and remove the resulting Contamination.

112.   Defendants, by reason of their waste of the Property, are liable for all of the damages to Plaintiff, including damages to the Property caused by the Contamination and investigation, remediation, cleanup and removal of and response to the Contamination.

207008

### AS AND FOR A NINTH CAUSE OF ACTION
### FOR EQUITABLE OR IMPLIED INDEMNIFICATION

113.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "112" of this Complaint as if set forth in this paragraph at length.

114.    Defendants have a non-delegable duty to Plaintiff and its predecessors to prevent, clean up or ensure against the Contamination of the Property.

115.    As a result of the breach of this duty by Defendants, they are responsible for Plaintiff's past and future expenses and damages in investigation, remediation, cleanup, and removal of, and response to, the Contamination and, as a result, Defendants should, in equity, indemnify Plaintiff for some or all of its expenses, costs and damages, to the extent not recoverable under CERCLA.

### AS AND FOR A TENTH CAUSE OF ACTION
### FOR RESTITUTION

116.    Plaintiff repeats and realleges the allegations of paragraphs "1" through "115" of this Complaint as if set forth in this paragraph at length.

117.    It would be against equity and good conscience to permit Defendants to pass the burden of cleaning up the Contamination on to Plaintiff, and for Defendants to have had the benefit or enjoyment of the use of, or work on, the Property, free of any responsibility for investigation, remediation, cleanup, and removal of, and response to the Contamination.

118.    Therefore, Defendants should make restitution to Plaintiff for some or all of its expenses, costs and damages to the extent not recoverable under CERCLA.

207008

### AS AND FOR A ELEVENTH CAUSE OF ACTION
### FOR BREACH OF LEASE

119.   Plaintiff repeats and realleges the allegations of paragraphs "1" through "118" of this Complaint as if set forth in this paragraph at length.

120.   Pursuant to the Lease, the Defendants covenanted and agreed that they would not use the demised premises in violation of the laws of the United States, the State of New York or the laws, ordinances or other regulations of the Town of East Greenbush.

121.   The Lease further provided that the Defendants agreed during the lease term to keep the property in a clean, safe, insurable and tenantable condition and in conformity with all laws applicable thereto.

122.   Defendants, by discharging and releasing hazardous substances into the environment and onto the Property of Plaintiff and causing Contamination thereof, are in violation of the laws and regulations of the United States, State of New York and Town of East Greenbush, and therefore they have breached the terms of the Lease.

123.   Plaintiff has duly performed all terms and conditions of the Lease.

124.   As a direct result of Defendants' Breach of Lease, Plaintiff has suffered damages which it is entitled to recover.

125.   By reason of this Breach of Lease, Defendants are liable for all of the damages to Plaintiff, including damages to the Property and investigation, remediation, cleanup and removal of and response to the Contamination.

126.   By reason of Defendants' continuing Breach of Lease, damage to the Property and refusal to abate and remove the hazardous substances from the environment, Defendants are no longer entitled to remain in occupancy of the leasehold.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Awarding Plaintiff approximately Seven Hundred Fifty Thousand and 00/100 ($750,000) Dollars in damages and response costs, with interest.

B. Declaring that Defendants are responsible for investigation, remediation, cleanup, removal of, and response to the Contamination, and future response costs.

C. Awarding Plaintiff its actual and necessary costs, disbursements and expenses, including reasonable attorney and expert witness fees.

D. Awarding such other damages and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands Trial by Jury pursuant to F.R.C.P. Rule 38(b).

Dated: Albany, New York
       June 24, 2014

                                              _David C. Rowley_
                                              COOPER ERVING & SAVAGE LLP
                                              David C. Rowley, Esq.
                                              Bar Roll No.: 103500
                                              Attorneys for Plaintiff
                                              39 North Pearl Street
                                              Albany, New York 12207
                                              Tel: (518) 449-3900

19

207008